UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GARFIELD PHILLIPS,<br><br>    Plaintiff,<br><br>    v.<br><br>PHYLLIS BAXTER, et al.,<br><br>    Defendants. | 16 C 8233 |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendants' Illinois Department of Human Services ("IDHS") and individual state employees Phyllis Baxter ("Baxter"), William Willis ("Willis"), Rosemary Norris ("Norris"), and Gayle Stricklin ("Stricklin") (collectively, "Defendants") motion to dismiss Plaintiff Garfield Phillips' ("Phillips") verified complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants Defendants' motion.

## BACKGROUND

The following facts are taken from Phillips' verified complaint and are assumed to be true for purposes of this motion. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). The Court draws all reasonable inferences in favor of Phillips. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

IDHS employed Phillips as a Human Service Caseworker Manager until March 7, 2016, when he voluntarily terminated his employment. Phillips alleges that in March

2015, he criticized Baxter's management style, the IDHS Region 2 SNAP Accuracy Liaison/Acting Local Office Administrator, by questioning Baxter's assignment of caseworkers. In April 2015, Phillips informed union leadership that Baxter, along with other managers, routinely reported to work late and submitted improper time cards. Due to his statements, Phillips claims that Baxter took retaliatory actions against him, including: restricting Phillips' phone to permit only local calls, limiting Phillips' security profile to prevent him from creating and assigning office tags to front line staff, and barring Phillips from assigning new cases to frontline staff.

On August 20, 2015, Phillips interviewed for a position as Public Service Administrator at IDHS' local office in Kankakee (the "Local Office"). Norris was awarded the position. Phillips claims that he had more training and experience to fulfill the duties and responsibilities of a Public Service Administrator than Norris did. On December 3, 2015, Phillips interviewed for the position of Region 2 SNAP Accuracy-Liaison. Baxter was awarded the position.

In January 2016, Phillips alleges that he was instructed to begin processing Spanish applications and to assist frontline staff with non-managerial "common casework." Phillips maintains that other similarly situated employees were not required to perform these tasks. In February 2016, Phillips claims that Baxter, Stricklin, Willis, and Norris discussed an inter-office transfer of Phillips from the Region 2 Processing Hub to the Local Office without his consultation. Subsequently, Phillips contends that he accidentally walked into a meeting between Willis and Norris, at which time Willis

2

stated, "we need your help at the Kankakee Local Office." On February 19, 2016, Baxter notified Phillips, that on February 22, 2016, he was going to be transferred. Phillips told Baxter that he would not consent to a transfer. Phillis alleges that he was informed that if he did not accept the transfer, he would be disciplined for insubordination and subject to discharge.

Phillips claims that on February 22, 2016, at 9:00 a.m., Baxter entered Phillips' office and told him to pack up and leave. When Phillips told Baxter that she did not have the authority to transfer him, Phillips claims that Baxter became enraged. Specifically, Phillips contends that Baxter told him to "leave before something bad happens to you," and that Baxter would "call the cops" on Phillips if necessary. Furthermore, Phillips claims that Baxter told union representatives at the Local Office to "come and get him . . . before something bad happens to him!" Phillips also received an email from Stricklin informing him to leave the building by noon. Phillips contends that he left the office in fear that he was in danger. Moreover, a union representative allegedly informed Phillips that he was no longer allowed to access the Region 2 Processing Hub and that he should report to the Kankakee Family Resource Center because his work experience was needed to improve the performance of that office.

On March 7, 2016, Phillips voluntarily terminated his employment with IDHS. Since resigning, Phillips claims that he has been eliminated from consideration for post-employment contractual work with IDHS, which is usually offered to former employees who are in good standing.

3

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations, but must provide enough factual support to raise his right to relief above a speculative level. *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be facially plausible, meaning that the pleadings must "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Phillips sues IDHS and individual state employees Baxter, Willis, Norris, and Stricklin for conspiracy to interfere with rights under 42 U.S.C. § 1985(3) (Count I), retaliation under 42 U.S.C. § 1981 (Count II), state-law intentional infliction of emotional distress ("IIED") (Count III), and state-law negligence (Count IV).

## I. 42 U.S.C. § 1985(3)

To state a claim under Section 1985(3), Phillips must allege: "(1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of the alleged conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens." *Majeske v. Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996) (citations omitted). To establish that the purpose of the conspiracy is to "deprive a person or class of persons of equal protection of the laws," Phillips must allege "some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

Defendants argue that Phillips "fails to sufficiently allege 'a purpose of depriving a person or class of persons of equal protection of the laws.'" (Citing *Majeske*, 94 F.3d at 311). We agree, and we dismiss Count I for two reasons. First, in his verified complaint, Phillips asserts, without citing to any factual support, that Defendants "were motivated by discriminatory based ethnocentrism." As the Seventh Circuit held in *Sung Park v. Indiana University School of Dentistry*, an unsupported legal conclusion is insufficient to state a claim. 692 F.3d 828, 832 (7th Cir. 2012).

Second, Defendants argue that Phillips' Section 1985(3) claim is also barred by the intra-corporate conspiracy doctrine. The intra-corporate conspiracy doctrine—which applies to large state agencies—holds that "a conspiracy cannot exist solely between the members of the same entity." *See Payton v. Rush-Presbyterian-St. Luke's Med. Cntr.*,

5

184 F.3d 623, 632 (7th Cir. 1999). Thus, employees of a government entity jointly pursuing its business do not become "conspirators" under Section 1985 when acts within the scope of their employment are alleged to be discriminatory or retaliatory. *Wright v. Ill. Dep't of Children & Family Servs.*, 40 F.3d 1492, 1508–09 (7th Cir. 1994). "[E]gregious circumstances" serve as an exception to the doctrine. *Id.* at 1509. An "egregious circumstance" arises: (i) "where corporate employees are shown to have been motivated solely by personal bias," and (ii) where "the conspiracy was part of some broader discriminatory pattern . . . , or . . . permeated the ranks of the organization's employees." *Hartman v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 4 F.3d 465, 470–71 (7th Cir. 1993).

Here, Phillips claims that individual Defendants, in the course of their employment with IDHS, conspired to transfer him to the Local Office without his consent and in violation of the collective bargaining agreement. Defendants contend that this action—an unwanted inter-office transfer—was not egregious. This Court concurs with Defendants.

First, Phillips has not alleged that Defendants acted *solely* from personal bias. *Hartman* F.3d at 470. The Ku Klux Klan incorporating to avoid conspiracy liability for "carrying out acts of violence" is an example of personal bias. *Travis v. Gary Cmty. Mental Health Ctr., Inc.*, 921 F.2d 108, 110 (7th Cir. 1990). Nothing in Phillips' verified complaint suggests that level of egregiousness. Phillips also alleges in his verified complaint that he was transferred for the innocent motive of "improve[ing] the

performance" of the Kankakee Family Community Resource Center. Therefore, this exception will not save Phillips' conspiracy claims.

Second, Phillips has not alleged that the "conspiracy was part of some broader discriminatory pattern" or "that it in any way permeated the ranks of the organization's employees." *Hartman*, F.3d at 470. Phillips contends that he was subjected to an unwanted inter-office transfer, along with verbal threats if he did not comply with the transfer, which created a hostile work environment. However, in *Cole v. Board of Trustees of Northern Illinois University*, this Court held that allegations that a handful of officers had demoted and suspended the plaintiff, and created a hostile work environment were insufficient to plausibly allege either a broad discriminatory pattern or that discriminatory behavior had permeated the ranks of the organization's employees. F.3d 925, 935 (N.D. IL 2014). Thus, this exception is of no benefit to Phillips and his conspiracy claim. Accordingly, Count I is dismissed.

## II. 42 U.S.C. § 1981(a)

Count II alleges a violation of Section 1981 against state actors. However, the Seventh Circuit held in *Campbell v. Forest Pres. District of Cook County* that Section 1983 is the exclusive remedy for alleged violations brought against state actors. 752 F.3d 665, 671 (7th Cir. 2014). Phillips, in response to Defendants' motion to dismiss, concedes that he cannot proceed on Count II. Because there is no private right of action against Stricklin and Baxter under Section 1981, we dismiss Count II.

### III. Intentional Infliction of Emotional Distress (IIED)

Under Illinois law, to establish a claim for IIED, Phillips must show that: (i) Stricklin and Baxter's conduct was truly extreme and outrageous; (ii) they intended to inflict severe emotional distress or knew that there was a high probability that their conduct would cause severe emotional distress; and (iii) their conduct did cause severe emotional distress. *See Harriston v. Chi. Tribune Co.*, 992 F.2d 697, 702 (7th Cir. 1993); *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). "[T]he tort does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *McGrath*, 533 N.E.2d at 809. "The conduct must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2016). To determine whether the conduct alleged is extreme and outrageous, courts apply an objective standard. *Lewis v. School Dist. #70*, 523 F.3d 730, 747 (7th Cir. 2008).

Phillips contends that Stricklin and Baxter's conduct "was extreme and outrageous, exceeding all bounds of human decency." Specifically, Phillips claims that he suffered serve emotional distress when Baxter instructed him to pack up his current office and report to the Local Office. When Phillips refused to leave, he alleges that Baxter threatened to involve the authorities and requested assistance from union representatives at the Local Office.

Defendants argue that Phillips' allegations do not rise to the level of conduct that can be deemed extreme and outrageous. In support of their position, Defendants cite to

8

*Harriston v. Chicago Tribune Company*. 992 F.2d 697, 703 (7th Cir. 1993). In *Harriston*, the Seventh Circuit held that the plaintiff failed to state a claim for IIED even though she alleged that she was subjected to a continuous series of intentionally discriminatory conduct, including: that the defendants reprimanded her for no reason, refused to allow her to participate in a management incentive fund, forced her out of her management position, took away her major accounts and gave her less lucrative accounts in return, falsely accused her of having poor sales, threatened her with discipline, excluded her from office activities, monitored her telephone calls with an eavesdropping device, and ignored concerns for her health and safety after her personal property was damaged on company premises. 992 F.2d at 703. The Court determined that these allegations were "not so severe that a reasonable person could not be expected to endure it, and it did not go beyond all possible bounds of decency." *Id.* Phillips' claims do not reach the level of the conduct alleged in *Harriston*. Therefore, this Court concludes that Stricklin and Baxter's alleged conduct was not extreme and outrageous, and dismisses Count III.

## IV. State Lawsuit Immunity Act

Defendants contend that Counts III and IV of Phillips' verified complaint, alleging state-law tort claims for IIED and negligence, are barred by the State Lawsuit Immunity Act. 745 Ill. Comp. Stat. 5/1. Phillips fails to respond to Defendants' argument. "The Illinois State Lawsuit Immunity Act, provides that the State of Illinois is immune from suit in any court, except as provided in the Illinois Court of Claims Act, 705 Ill. Comp.

9

Stat. 505/8 (and other statutes not relevant here), which vests jurisdiction over state tort claims against the state in the Illinois Court of Claims." *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001). "[S]tate rules of immunity are binding in federal court with respect to state causes of action." *Omosegbon v. Wells*, 335 F.3d 668, 673 (7th Cir. 2003) (citations omitted).

The State Lawsuit Immunity Act bars Phillips from naming IDHS as a Defendant in a state-law tort action before this Court. Furthermore, Phillips cannot evade sovereign immunity by merely adding individual Defendants to his verified complaint. *See Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990) ("[T]he prohibition 'against making the State of Illinois a party to a suit cannot be evaded by making an action nominally against the servants or agents of the State'" (quoting *Sass v. Kramer*, 381 N.E.2d 975, 977 (Ill. 1978))). In determining whether an action is against the State itself, courts generally consider whether: (i) there are no allegations that a State agent or employee acted beyond the scope of his or her authority through wrongful acts; (ii) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (iii) the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State. *Jinkins v. Lee*, 807 N.E.2d 411, 418 (Ill. 2004). Furthermore, "[e]ven when these criteria are not met, a court must consider the relief sought." *Welch*, 751 N.E.2d at 1193. Sovereign immunity applies if a judgment for the plaintiff could operate to control the actions of the State or subject it to liability. *Id.*

Here, Phillips alleges that Stricklin and Baxter assigned him diminished duties as a manager, facilitated his transfer to another location, and threatened him with disciplinary action upon his refusal to comply with the transfer. These allegations are directly tied to Stricklin and Baxter's authority as IDHS Administrators. Therefore, Phillips' allegations involve precisely the type of evaluation and personnel decisions that are within normal and official supervisory job duties. *See Cortright v. Doyle*, 898 N.E.2d 1153, 1159-60 (Ill. App. Ct. 2008). Thus, Stricklin and Baxter were acting as agents of the State of Illinois. For that reason, Count IV is dismissed.[1]

## CONCLUSION

For the aforementioned reasons, the Court grants Defendants' motion to dismiss.

Dated: 5/24/2017

_____
Charles P. Kocoras
United States District Judge

---

[1] While Count III was dismissed because Phillips did not state a claim for IIED, it is similarly barred by the State Lawsuit Immunity Act.