# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

GARFIELD PHILLIPS,             )
                                   )
             Plaintiff,      )
                                   )
         v.              )      16 C 8233
                                   )
PHYLLIS BAXTER, et al.      )
                                   )
            Defendants.   )

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendants Phyllis Baxter and Gayle Stricklin's (together, "Defendants") Motion for Summary Judgment. Dkt. # 142. For the following reasons, the Court grants the Motion for Summary Judgment.

## BACKGROUND

In resolving a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The following facts are taken from the record and are undisputed unless otherwise noted.[1]

---

[1] Although Plaintiff Garfield Phillips did file a response to Defendants' statement of material facts as required by Local Rule 56.1(b)(2), only 6 out of the 74 responses contained a citation to evidence in the record, which Local Rule 56.1(e) requires. Without evidentiary citations, Phillips's attempts to "dispute" Defendants' statements of fact fail. As such, all 68 of Defendants' facts that Phillips does not attempt to dispute with evidence are deemed admitted. *See Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005) ("[F]ailure to properly meet the requirements to deny a moving party's statement of facts results in the moving party's version of the facts being

At all times relevant to this motion, Phillips, male, held the position of Spanish Option Human Services Casework Manager with the Illinois Department of Human Services ("DHS") until he tendered a resignation letter on March 8, 2016, effective February 22, 2016.

Phillips's position as Human Services Casework Manager required the ability to speak, read, and write Spanish at a colloquial skill level; communicate in Spanish to those individuals who do not speak or read English; and translate functions/procedures into Spanish for individuals who cannot speak or read English. While Phillips worked for DHS, he was fluent in Spanish. Phillips received additional payment to his salary because he performed bilingual translations.

At all relevant times, Defendant Stricklin, a white woman, was Region 2 Administrator. At all relevant times, Defendant Baxter, an African American woman, was Phillips's direct supervisor.

---

deemed admitted.") (citation omitted). The other six are addressed individually herein. Similarly, Phillips's Statement of Additional Facts largely does not comply with Local Rule 56.1. First, he includes 60 additional facts when Local Rule 56.1(d) limits such a statement to 40. Second, he again fails to support his assertions with evidence, including citations for only five of his asserted facts. The Court addresses those five individually herein, and all others are rejected. Phillips's generalized headings in his statement, stating that certain asserted facts are "relevant to" certain paragraphs of his Verified Second Amended Complaint ("VSAC"), are disregarded because they do not meet Local Rule 56.1(d)'s requirement that *each* asserted fact be supported by citation to *specific* evidentiary material. *See, e.g.*, Dkt. # 152, at 19 ("POSF #29 to POSF #36 are relevant to paragraphs 91, 92, 93, 94, 95, 96, 97 and 98 of Plaintiffs [*sic*] [VSAC]").

From May of 2014, until January of 2016, Baxter was the Local Office Administrator for the Region 2 Processing Hub. Additionally, Baxter was the Acting Local Office Administrator for the Region 2 Processing Hub, effective February 2016.

Baxter's responsibilities included, but were not limited to, the following:

> Served as the full time [*sic*] administrator. Oversaw the daily operations of the Region Processing 2 Hub. Baxter was the immediate supervisor to three Human Service Casework Managers—Plaintiff, Elizabeth Jackson ("Jackson"), and Michelle Borden ("Borden"). Baxter heard and responded to grievances on first and second level. Baxter also served as full-line supervisor; assigned and reviewed work; provided guidance and day-to-day training to assigned staff; counseled staff regarding work performance; reassigned staff to meet day-to-day operating needs; established goals and objectives; approved time off; adjusted first level grievances; recommended and imposed discipline, up to and including discharge; prepared and signed performance evaluations; and determined and recommended staffing needs.

Dkt. # 144, ¶ 64.

Michelle Borden was a manager in DHS' Region 2 Processing Hub. Elizabeth Jackson was a manager in DHS' Region 2 Processing Hub, and is African American. Neither Jackson nor Borden speak Spanish and they are not employed as Spanish Option Caseworkers. Prior to the May 2014 opening of the Region 2 Processing Hub, Jackson, Borden, and Phillips were all assigned to the Kankakee Local Office.

Edward Gutierrez, male, was a manager in DHS' Kankakee Local Office, until his reassignment to DHS' Region 2 Processing Hub on February 22, 2016. Gutierrez was a Spanish Option Casework Manager. He required additional training in overall management duties.

3

One of the daily responsibilities of Casework Managers like Phillips is to assist front line staff. Effective April 20, 2015, Baxter implemented the Daily Hub Management Activity to ensure that workload was distributed fairly among the Casework Managers—Phillips, Jackson, and Borden—and to ensure that workers clearly understood which manager to go to for assignments and questions each day. The Casework Managers rotated turns as "manager on duty" so that the responsibilities could be split evenly and no manager could override the "manager on duty" for the day.

Phillips was very skilled and experienced at providing guidance to Caseworkers so they could navigate the Integrated Eligibility System ("IES"), as well as guiding Caseworkers in processing and certifying client applications for benefits. His expertise was needed to help the Kankakee Local Office.

During his time working at DHS, Phillips was subject to the DHS policies and procedures. He is familiar with the DHS Employee Handbook. The DHS Employee Handbook, in a section titled "EMPLOYEE PERSONAL CONDUCT", states: "An Employee shall not refuse to follow supervisory instructions." Dkt. # 144, ¶ 63.

Phillips never disclosed on any DHS paperwork that he is of Antiguan ancestry.

Stricklin never made any derogatory comments to Phillips based on his sex, race, or national origin.[2]

---

[2] Phillips unsuccessfully attempts to dispute this fact by stating that "Stricklin made a publication *to a 3rd party*, Donna Cain, Will County LOA, in an email sent on February 22nd, 2016, made [*sic*] reference to a racial epithet with Plaintiff as the subject matter." Dkt. # 152, at 8 (emphasis added). He cites an email from Stricklin to Cain in which Stricklin states: "I would definitely recommend you not let him in to visit with staff either. He left very angry and I do not want him wandering

Baxter never made any derogatory comments to Phillips based on his sex, race, or national origin.[3] Baxter has never subjected Phillips to bodily harm or injury and has never physically touched Phillips. Phillips has never seen Baxter inflict bodily harm and injury upon anyone.

From April 21, 2015, through April 30, 2015, Phillips did not report to work and he accumulated eight unauthorized absences. On May 5, 2015, Phillips emailed DHS Human Resources employee Janie Caldwell, requesting a retroactive leave of absence for the time period of April 22, 2015, until May 1, 2015. Phillips did not submit the CMS-95 form required to process this request.

In May 2015, Phillips was scheduled for a pre-disciplinary hearing regarding the unauthorized absences in violation of the DHS Affirmative Attendance Policy. That same month, Phillips's pre-disciplinary hearing was cancelled after Phillips's absences were approved following his submission of all required paperwork.

---

around here for you to deal with. Like father . . . . Like son." *Id*., Ex. A. Putting aside whether "like father like son" is a racial epithet, which the Court will discuss *infra*, this email from Stricklin to a third party does not adequately dispute the fact asserted by Defendants that Stricklin never made derogatory comments *to Phillips* based on his sex, race, or national origin.

[3] Phillips unsuccessfully attempts to dispute this fact by stating that Baxter "sent an email *to Defendant Stricklin and made a publication to a 3rd party*, William Willis, Kankakee Local Office Administrator, made reference to the Doctrine of White Supremacy, 'separate but equal' with Plaintiff Phillips as the subject matter." Dkt. # 152, at 8 (emphasis added). He cites an email from Baxter to Stricklin and Willis in which Baxter states: "If Mr. Phillips comes in that will be perfect then Mr. Willis will be able to let them know that they will have a bi-lingual manager over there and it's simply a SWAP. I will also stress that although the staff is under one umbrella, the Region governs the structure and the work of the Hub. It will enforce the 'same but separate' concept." *Id*., Ex. B. For the same reasons stated above, an email from Baxter to people other than Phillips does not adequately dispute the asserted fact that Baxter never made derogatory comments *to Phillips*. *See supra*, note 2.

Theresa Olson was the training coordinator for Region 2 and was responsible for scheduling employee training. Any managers could sign up for online training and were not required to ask for permission to do so. All managers received IES training, which was mandatory. DHS statewide Training Records show that Phillips received IES Training. Phillips did not make a request for manager training to Baxter or Stricklin.[4]

Phillips never informed Defendants that there were restrictions on his phone that impaired his ability to do his job or that he experienced any issues with his phone. Phillips never informed tech support of any restrictions on his ability to make calls or any other issues with his phone. Phone records show that the phone assigned to Phillips was used to make long distance calls each month from April 2015 through February 2016, with the exception of June 2015.

Phillips believes his security profile was diminished because he was unable to open certain computer applications. He did not inform Defendants about his perceived diminished security profile or being unable to open certain computer applications.

Phillips never had access to Jackson or Borden's security profiles and he does not know what the status of either of their security profiles were in July 2015.

---

[4] Phillips attempts to dispute this fact, stating that he "made a request to Baxter regarding the lack of training while noticing other HSCMs leaving the office to attend training." Dkt. # 152, at 5. He cites paragraphs 69 and 70 of his Verified Second Amended Complaint ("VSAC"), which state, respectively: "during the month of May, 2015, I approached defendant Baxter and asked her, 'Why is it that other similarly situated Managers are attending Managers Class Room Training, and that I have never been included?" and "Baxter repl[ied] to my question by saying, 'Gayle has not scheduled you for training, and as a matter of fact, you may never get any training.'" Dkt. # 74, ¶¶ 69–70. Because these paragraphs of the VSAC do not demonstrate that Phillips requested manager training, Defendants' fact is not adequately disputed and is deemed admitted.

The Bureau of Recruitment and Selection ("BRS") is responsible for processing applications and selecting qualified candidates for professional titles (which require a college degree, licensure, or certification), including but not limited to public service administrators and paraprofessionals (clerical, technician, and service maintenance titles). The BRS interviews candidates with questions based on job requirements, and candidates are scored based upon their interviews. Higher scores are awarded to candidates that respond with answers that are more in line with the job criteria and requirements. The candidate with the highest score is offered the position by the BRS.

The BRS selected Rosemary Norris, an African American woman, for a Public Service Administrator position because she had the highest score. This position was a non-bargaining unit position and seniority was not relevant for this position. Phillips is not familiar with Norris' experience and training. He never supervised Norris, never worked directly with her, and never had access to her personnel file or saw her resume.

Baxter applied and interviewed for the Region 2 SNAP Accuracy Liaison position. The BRS offered her the position because she had the highest interview score.

Phillips does not remember who interviewed him for the position of Region 2 SNAP Accuracy Liaison. At the time he interviewed for the position, Baxter was his supervisor. Phillips has not seen Baxter's resume and never had access to her personnel file. At the time of the application process in December 2015, Baxter had worked for DHS longer than Phillips.

In 2015, during a labor management meeting attended by Baxter, Willis, Yaquantis Adams (a union steward), and Adienna Burns (a union steward) to address managers and staffing needs at the Kankakee Local Office, union steward Adams suggested that Phillips be reassigned back to the Kankakee Local Office to meet staffing needs there.[5] Stricklin decided to reassign Phillips and Gutierrez so Phillips could help the Kankakee Office and Baxter could help provide additional training to Gutierrez.[6]

On February 16, 2016, Baxter notified Phillips that he would be reassigned to the Kankakee Local Office, which is located in the same building as the Region 2 Processing Hub. Phillips's position, job duties, salary, and benefits did not change as a result of his assignment to the Kankakee Local Office.

---

[5] Phillips unsuccessfully attempts to dispute this fact by stating the "suggestion" that Adams "provoked the Defendants to openly discriminate against" Phillips is "hilarity" and citing a 2016 email from Adams to Stricklin and others. Dkt. # 152, at 10. The 2016 email from Adams to Stricklin, apparently objecting to Phillips's transfer to the Kankakee office, says nothing about what was discussed at a 2015 labor management meeting. This fact is deemed admitted. *See Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) (". . . the nonmovant must cite specific evidentiary materials justifying the denial. If the cited material does not clearly create a genuine dispute over the movant's allegedly undisputed fact, the nonmovant should provide an explanation.").

[6] Phillips unsuccessfully attempts to dispute this fact by stating that the "true motivation" for Phillips's transfer is demonstrated by Baxter's "same but separate" email, discussed *supra*. Dkt. # 152, at 10 (citing Ex. B); *see supra* n.3. That email says nothing about the "same but separate" approach being the reason or "motivation" for the transfer of Phillips and Gutierrez. Phillips's asserted "fact" is purely speculative and is thus rejected. *Malec*, 191 F.R.D. at 584 (Local Rule 56.1(b)(3)(C) is not satisfied by "purely argumentative denials"); *Bordelon v. Bd. of Educ. of the City of Chi.*, 811 F.3d 984, 989 (7th Cir. 2016) ("Conclusory statements, not grounded in specific facts" cannot defeat a motion for summary judgment) (cleaned up).

Phillips informed Baxter that he did not request a transfer to the Kankakee Office and that he would not report to the Kankakee Office. On February 22, 2016, Baxter instructed Phillips to report to the Kankakee Office. On the same day, Stricklin also told Phillips to relocate to his new assignment by noon that day.

Phillips departed from his work site during the morning of February 22, 2016, without telling management or anyone that he was leaving, he did not sign out of work, and he did not return for the rest of the day. Phillips disputes this fact, asserting that he called DHS and reported that he had left for the day.[7] Phillips called in sick or for inclement weather on February 18–19, 22–26, and 29.[8]

Phillips was required to sign out of work.

Phillips never received any official communication from DHS informing him that he is barred from visiting his former co-workers.

---

[7] Phillips asserts that "[a]fter evacuating the building at the Region 2 Processing Hub, because Plaintiff had received threats of bodily harm from Defendant Baxter, when Plaintiff reached the safety of his home in Joliet, IL, he called DHS at 815-939-8044 and reported that he had left for the day because of an emergency." Dkt. # 152, at 12 (citing *id*., Ex. D). But the exhibit he cites, an email from Michele Webster to Baxter, Willis, and Stricklin, says that on February 22, Phillips "called stating he left at 10:00 break, ill & unable to return for remainder of day." *Id*., Ex. D. The exhibit only supports that Phillips called someone at DHS (it's not clear that it was "management") saying that he was ill and would not return. It does not support that he left the building because of "threats of bodily harm from Defendant Baxter" or that he called a specific phone number.

[8] Phillips also cites Exhibit D for his additional fact No. 54: "On February 22nd, 2016, at 12:01 pm, Plaintiff reported to DHS that he had left for the day and from February 23rd, 2016 to his resignation on March 8th, 2016, Plaintiff called DHS at 815-939-8840 to report for work." *Id*. But the exhibit only supports that Phillips called DHS on February 18–19, 22–26, and 29. *See id.*, Ex. D.

Since his resignation, Phillips has not looked for work. He testified that he could have returned to work. Phillips never applied for post-employment contractual work with DHS and never contacted anyone to inquire about post-employment contractual work.[9]

The surviving claims in Phillips's Second Amended Complaint are: (1) race discrimination under 42 U.S.C. § 1981(a) and the Equal Protection Clause of the Fourteenth Amendment ("the Equal Protection Clause") brought pursuant to 42 U.S.C § 1983, and sex discrimination under Section 1983 against Stricklin; and (2) the same claims against Baxter. To the extent Counts I and II relied on allegations from 2012 or on allegations of sex discrimination in violation of Section 1981, they were dismissed. Dkt. # 95. All other counts in the Second Amended Complaint were dismissed in their entirety.[10] *Id*. Defendants Stricklin and Baxter now move for summary judgment on the remaining claims for race and sex discrimination

## LEGAL STANDARD

---

[9] Phillips unsuccessfully attempts to dispute this fact by stating that it was "Baxter and Stricklin, along with Hillary Vassner, who filed a false report with DHS that Plaintiff had abandoned his post on February 22, 2016, and never reported to work again causing Plaintiff to be black listed and placed on the 'Do Not Rehire' list at DHS." Dkt. # 152, at 14. He cites Exhibit D, discussed *supra* n.8, n.9, which in no way supports Phillips's statement or contravenes Defendants' asserted fact. *See id*., Ex. D. At most, Exhibit D could show that he "reported" for work by calling in sick or for inclement weather on February 18–19, 22–26, and 29. *See id.* Therefore, this fact is deemed admitted.

[10] Any discussion in Phillips's briefs regarding claims of conspiracy or retaliation is disregarded. Those claims were dismissed. Dkt. # 34; *see also* Dkt. # 95.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). "A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cnty.*, 752 F.3d 708, 712 (7th Cir. 2014) (cleaned up).

In deciding whether a dispute exists, the Court must "construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1074 (7th Cir. 2016). The nonmovant "must go beyond the pleadings" to demonstrate that there is evidence "upon which a jury could properly proceed to find a verdict in [their] favor." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168–69 (7th Cir. 2013). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). And "[c]onclusory statements, not grounded in specific facts" cannot defeat a motion for summary judgment. *Bordelon*, 811 F.3d at 989 (cleaned up).

Not all factual disputes will preclude the entry of summary judgment, only those that "could affect the outcome of the suit under governing law." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted). In deciding a motion for summary judgment, the Court's sole function is "to determine whether there is a genuine issue

11

for trial." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). The Court cannot weigh conflicting evidence, assess the credibility of witnesses, or determine the ultimate truth of the matter, as these are functions of the jury. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986); *Omnicare, Inc. v. UnitedHealth Grp., Inc*., 629 F.3d 697, 704–05 (7th Cir. 2011).

Local Rule 56.1 requires a party moving for summary judgment to submit a statement of material facts as to which the movant contends there is no genuine issue and entitles the movant to judgment as a matter of law. The party opposing the motion for summary judgment is then required to file "any opposing affidavits and other materials referred to in [Federal Rule of Civil Procedure 56(e)]" and a "concise response" to the movant's statement of facts containing "any disagreement, specific references to the affidavits, parts of the record, and other supporting materials." L.R. 56.1(b)(1), (3).

"A general denial is insufficient to rebut a movant's factual allegations; the nonmovant must cite specific evidentiary materials justifying the denial." *Malec*, 191 F.R.D. at 584. Local Rule 56.1(b)(3)(C) is not satisfied by "purely argumentative denials," *id.*, or "evasive denials that do not fairly meet the substance of the material facts asserted," *Bordelon v. Chi. Sch. Reform Bd. of Trs*., 233 F.3d 524, 528 (7th Cir. 2000). If a response to a statement of material fact provides only extraneous or argumentative information, this response will not constitute a proper denial of the fact, and the fact is admitted. *See Graziano*, 401 F. Supp. 2d at 936. Similarly, if a statement

of fact contains a legal conclusion or otherwise unsupported statement, including a fact that relies upon inadmissible hearsay, such a fact is disregarded. *Eisenstadt*, 113 F.3d at 742. "The purpose of the 56.1 statement is to identify for the Court the evidence supporting a party's factual assertions in an organized manner[;] it is not intended as a forum for factual or legal argument." *Malec*, 191 F.R.D. at 585.

## DISCUSSION

Phillips alleges that a number of adverse employment actions were taken against him by Defendants due to his gender, race, and/or national origin. These include, for example, claims that Defendants changed Phillips's duties by removing him from management meetings and having him perform "common casework" and process Spanish-language applications, rejected him for promotions when they promoted Baxter and Norris instead of him, denied him manager training, involuntarily transferred him to another office, filed "false reports" and initiated termination proceedings against him, made him "subservient" to his white, female coworkers, and denied him post-employment contractual work. Phillips also alleges that he was subjected to a hostile work environment.

Even assuming that any or all of these alleged events occurred as Phillips describes, and if they did, that they constitute adverse employment actions, Phillips's

sex, race, and national origin claims all suffer from the same defect: there is no evidence of discrimination.[11]

Phillips's briefs are full of arguments and statements unsupported by facts in the record. As the Seventh Circuit has reiterated time and again, summary judgment is the "'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schact v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999). As discussed *supra*, Phillips also fails to dispute the vast majority of Defendants' asserted facts, which results in the admission of Defendants' version of those facts. *See* L.R. 56.1(e). Consequently, and for the specific reasons discussed below, Phillips has failed to present any evidence from which a reasonable jury could conclude that the alleged adverse employment actions were the result of discrimination.

## I.    Sex Discrimination Under Section 1983

---

[11] As discussed above, Phillips's statement of additional facts is largely disregarded for its failure to conform with Local Rule 56.1's requirements, *supra*, n.1, and the Court has addressed specific facts asserted by Phillips throughout this opinion. The Court also noted above that Phillips's attempts to generally and non-specifically assign groups of asserted facts to groups of paragraphs in his VSAC also did not comply with Local Rule 56.1. *Id.* But the Court notes that even if we look at those "groups" of asserted facts, the majority of them are completely unsupported by the groups of VSAC paragraphs that Phillips cites, or the cited paragraphs do not reflect Phillips's personal knowledge, which is required of a personal affidavit. *See Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004). Only a handful of them are arguably supported by the cited VSAC paragraphs, but even those do not present any evidence of discrimination as they have nothing to do with Phillips's gender, national origin, or race. *See* Dkt. # 152, Nos. 32–34, 40, 42–43, 46–48.

We first address Phillips's claims of discrimination on the basis of sex. Public employee sex discrimination claims brought under the Equal Protection Clause are analyzed the same as claims brought under Title VII, 42 U.S.C. § 2000e-2. *Phillips v. Baxter*, 768 Fed. Appx. 555, 559 (7th Cir. 2019). To survive Defendants' motion for summary judgment, Phillips "must produce enough evidence for a reasonable factfinder to conclude" that Phillips's sex caused an adverse employment action. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). "The evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Id.* In other words, we "ask whether the totality of the evidence shows discrimination, eschewing any framework or formula." *Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 958 (7th Cir. 2021).

The Seventh Circuit has explained that "it is the unusual employer who discriminates against majority employees, [so] a male plaintiff alleging gender discrimination must show something more than the fact that he is gendered." *Id.* (cleaned up). In reverse discrimination cases, the plaintiff "must show background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against [men] or evidence that there is something 'fishy' about the facts at hand." *Id.* (cleaned up).

Defendants move for summary judgment on Phillips's sex discrimination claims, which encompass allegations of several adverse employment actions by Defendants,

listed *supra*.  Even assuming all these occurrences constitute adverse employment actions, Phillips has failed to present any evidence from which a reasonable jury could conclude that such actions were the result of gender discrimination.

In short, Phillips has failed to "show something more than the fact that he is gendered." *Id*. (cleaned up).  He has come forward with no facts to support his sex discrimination claims other than the fact that he is male while Defendants and his other coworkers are female.  He has shown no "background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against [men] or evidence that there is something 'fishy' about the facts at hand." *Id*.  And it is undisputed that neither Baxter nor Stricklin ever made any derogatory comments to Phillips based on his sex.

For example, as to Stricklin hiring Norris for the position of public service administrator, Phillips has come forward with no facts evidencing discrimination.  It is undisputed that Phillips has no knowledge of Norris's credentials and that she had the highest "candidate score."  The same goes for the hiring of Baxter to the Region 2 SNAP Accuracy-Liaison position.  It is undisputed that Phillips is unfamiliar with Baxter's credentials, that Baxter had seniority over Phillips, and that she had the highest "candidate score."  Phillips has no evidence to demonstrate that either Norris or Baxter was not more qualified than Phillips for those positions, nor can he demonstrate any "fishy" circumstances around their hiring as it relates to gender.

As to the other alleged adverse employment actions, Phillips similarly does not come forward with evidence of discrimination or that Defendants had "reason or inclination to discriminate invidiously against [men] or evidence that there is something 'fishy' about the facts at hand." *Id*.

He also does not support his hostile work environment claim with evidence that Baxter, who allegedly "shouted at him in an abusive, hostile, threatening tone of voice," did so because of Phillips's sex. *See Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 462 (7th Cir. 2002).

Phillips offers nothing but speculation as to the motives behind the various allegedly adverse employment actions. "[O]ur favor toward the nonmoving party on summary judgment 'does not extend to drawing inferences that are supported by only speculation or conjecture.'" *Brown v. Advocate S. Suburban Hosp.,* 700 F.3d 1101, 1108 (7th Cir. 2012) (citing *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)); *see also Mlynczak v. Bodman*, 442 F.3d 1050, 1058 (7th Cir. 2006) ("As we have noted before, if the subjective beliefs of plaintiffs in employment discrimination cases could, by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed.") (cleaned up).

Even if Phillips was treated less favorably than his coworkers, Phillips presented no evidence from which a reasonable jury could conclude that such events were due to

his sex. Phillips's dissatisfaction with his treatment does not amount to discrimination just because his coworkers were female.

Construing the facts and all reasonable inferences in his favor—as the Court is required to do at this procedural posture—Phillips has not presented sufficient evidence creating a genuine issue of material fact for trial concerning his reverse sex discrimination claim. *See Blow v. Bijora, Inc.*, 855 F.3d 793, 797–98 (7th Cir. 2017) (if the plaintiff "'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' summary judgment must be granted.") (quoting *Celotex*, 477 U.S. at 322). Consequently, Defendants' motion for summary judgment is granted as to Phillips's claims for sex discrimination under Section 1983 in Counts I and II.

## II. Race Discrimination Under Section 1981 and Section 1983

Section 1981 prohibits race discrimination in the making and forming of contracts. *Smiley v. Columbia Coll. Chi.*, 714 F.3d 998, 1002 (7th Cir. 2013). Section 1983 authorizes suits to enforce individual rights under federal statutes as well as the Constitution against state and local government officials. *Levin v. Madigan*, 692 F.3d 607, 611 (7th Cir. 2012). To survive Defendants' motion for summary judgment, Phillips "must either provide enough evidence to permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the discharge or other adverse employment action . . . or employ the burden shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 [] (1973)." *Oliver v. Joint Logistics Managers, Inc.*, 893

F.3d 408, 411–12 (7th Cir. 2018) (citing *Ortiz*, 834 F.3d at 765). As with sex discrimination claims, "[e]vidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Id.* We "ask whether the totality of the evidence shows discrimination, eschewing any framework or formula." *Igasaki*, 988 F.3d at 958.

To establish a *prima facie* case of race discrimination under *McDonnell*, Phillips must establish that: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) the employer treated similarly situated employees not in the protected class more favorably. *Khowaja v. Sessions*, 893 F.3d 1010, 1014–15 (7th Cir. 2018). If Phillips demonstrates a *prima facie* case, the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for the employment action. *Id*. at 1015. If Defendants do so, Phillips must show that Defendants' stated reason for the adverse employment decision is pretextual. *Id*. As to Phillips's failure to hire claims, the analysis shifts slightly and instead requires a showing that: (1) he was a member of a protected class; (2) he applied for and was qualified for an open position; (3) he was rejected; and (4) the employer filled the position by hiring someone outside of the protected class, or left the position open. *Oliver*, 893 F.3d at 413.

While it is not a fact presented in any of the parties' statements of fact, Phillips attests in his VSAC that he is "of Antigua West Indies Island ethnicity" and is a

"naturalized citizen." Dkt. # 74, ¶ 4. To the extent Phillips's discrimination claim is based on his Antiguan West Indies Islander national origin, there is no evidence of discrimination. Phillips has come forward with no facts to show that Defendants were aware of his Antiguan origin, nor that any of the actions at issue here were motivated by his Antiguan origin. It is undisputed that Phillips never disclosed on any DHS paperwork that he is of Antiguan ancestry. It is undisputed that neither Baxter nor Stricklin ever made any derogatory comments to Phillips based on his national origin. There is also no evidence before the Court that Defendants knew of Phillips's naturalized citizen status or that he was discriminated against based on such status. Phillips has not presented sufficient evidence creating a genuine issue of material fact for trial concerning his national origin discrimination claim, and Defendants' motion is granted to the extent Counts I and II rely on such a claim. *See Blow*, 855 F.3d at 797–98.

That leaves Phillips's race discrimination claims. While it is not a fact presented in any of the parties' statements of fact, all seem to agree that Phillips is African American, and Phillips attests in his VSAC that he is "of Ghana Africa Origin/Ghana, Africa National Ancestry." Dkt. # 74, ¶ 4.

Again, even assuming the alleged actions taken against Phillips by the Defendants constitute adverse employment actions, Phillips does not supply evidence from which a reasonable jury could conclude that Phillips was discriminated against based on his race. We "ask whether the totality of the evidence shows discrimination,

eschewing any framework or formula" and here, the answer is no. *See Igasaki*, 988 F.3d at 958.

It is undisputed that neither Baxter nor Stricklin ever made any derogatory comments to Phillips based on his race, and the only facts asserted by Phillips that could potentially evidence discrimination are insufficient to survive summary judgment.

Phillips puts forth a single fact (No. 29) regarding Baxter's alleged discriminatory intent. He asserts that "[o]n February 3rd, 2016, Defendant Baxter, in a publication to a 3rd party, William Willis, Kankakee Local [O]ffice Administrator and copied to Defendant Stricklin made reference to the doctrine of white supremacy, 'separate but equal' in reference to Plaintiff Phillips." Dkt. 152, at 20 (citing Ex. B). There are many issues with this asserted fact, the first of which is that Baxter does not even seem to be talking about Phillips here—the email chain is discussing Gutierrez, with mention of Phillips only as the person with whom Gutierrez will be "swapping" places. *Id*., Ex. B. In the specific message at issue, Baxter notes that she will meet with *Gutierrez* in the morning, and that if Phillips comes in then Willis would "be able to let them know that they will have a bi-lingual manager over there and it's simply a SWAP. I will also stress that although the staff is under one umbrella, the Region governs the structure and work of the Hub. It will enforce the 'same but separate' concept." *Id*. Baxter seems to be talking about her meeting with *Gutierrez* in which she will discuss the "structure" and "work" of the Hub, which is "under one umbrella" of the Region, and is the "same but separate."

Besides Phillips not being the subject of the email, his assertion that Baxter using the words "same but separate" is a reference to "white supremacist doctrine" is mere speculation and conjecture. *See Brown,* 700 F.3d at 1108. There is no evidence to suggest that that Baxter is talking about anything other than the structure of the DHS offices. Thus, Phillips's asserted fact No. 29 is not admitted because it is not supported by record evidence. And the more than two pages of Phillips's response brief spent discussing his "separate but equal" theory is also disregarded as unsupported by record evidence. *See* Dkt. # 152, at 9–12. While the Court is required to draw all reasonable inferences in Phillips's favor, his conclusion about the motivation behind Baxter's email is not a reasonable one to draw. *See Lewis v. Washington*, 183 Fed. Appx. 553, 554 (7th Cir. 2006) ("the district court is never required to accept *unreasonable* factual inferences") (emphasis in original); *see also REXA, Inc. v. Chester*, 42 F.4th 652, 665 (7th Cir. 2022) ("Simply put, these inferences are barely 'conceivable' and certainly not 'reasonable,' so they will not be drawn at summary judgment."); *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co*., 994 F.3d 869, 876 (7th Cir. 2021) (a "conceivable" inference is not "necessarily reasonable at summary judgment.").

As with Baxter, Phillips puts forth a single fact (No. 50) regarding Stricklin's alleged discriminatory intent. Phillips asserts that in an "email sent on February 22nd, 2016, in a publication to a 3rd party, Donna Cain, Will County LOA, Defendant Stricklin used a racial epithet, 'Like Father, Like Son', in reference to Plaintiff Phillips." Dkt. # 152, at 22–23 (citing Ex. A). In the email chain, Stricklin first informs Cain that

she will be leaving the office for the day but that Phillips may be on his way to see her, and asks Cain to "let the security guard know and reception know I am not available." *Id*., Ex A. She then says: "I would definitely recommend you not let him in to visit with staff either. He left very angry and I do not want him wandering around here for you to deal with. Like father …. Like son." *Id*.

There is no evidence that "like father like son", a common expression, was used by Stricklin as a "racial epithet"—this is merely Phillips's speculation as to Stricklin's intent behind the statement. Thus, Phillips's asserted fact No. 50 is not admitted because it is not supported by record evidence.[12] Again, Phillips spends more than two pages of his response brief arguing that "like father, like son" is a racially motivated statement, again with no evidentiary support, nor even any sources to support his theory that the phrase refers to the Black community and post-Civil war sharecropping, tenant farming, and "forced labor." *See* Dkt. # 152, at 12–14. Again, this is not a reasonable conclusion to draw.

Even if the two emails discussed above could constitute evidence of discrimination, Phillips still fails to make his *prima facie* case because he has failed to

---

[12] Phillips cites the same email for his asserted fact No. 49, which states: "On February 22nd, 2016, at 11:36 am, Defendant Stricklin, made a publication to a 3rd party, in a[n] email to Donna Cain, Will County Administrator and copied to Margaret O'[L]eary, assistant LOA, Will County, and Diane Alexander, Will County office manager, issued a security alert, preventing Phillips access to the Will County office." The cited email does not demonstrate that Stricklin "issued a security alert" or "prevent[ed] Phillips access to the Will County Office." Stricklin merely asked Cain to "let the security guard know and reception that I am not available" and "recommend[ed] that Cain not let Phillips "visit with staff either." *See* Dkt. # 152, Ex. A. Thus, this fact is not admitted.

present evidence from which a reasonable jury could conclude that Defendants treated similarly situated employees not in the protected class more favorably. Both Norris and Baxter are African American and are therefore *in* the protected class, and there is no evidence showing that they were not more qualified than Phillips. Furthermore, Phillips has not presented evidence that any of his coworkers at issue were similarly situated to him. *See Khowaja*, 893 F.3d at 1015 ("Similarly situated employees must be directly comparable to the plaintiff in all material respects . . . In the usual case, a plaintiff must at least show that the comparators . . . engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.") (cleaned up).

He also does not support his hostile work environment claim with evidence that Baxter, who allegedly "shouted at him in an abusive, hostile, threatening tone of voice," did so because of Phillips's race. *See Hilt-Dyson*, 282 F.3d at 462.

Finally, Phillips's "belief" that he was terminated because of his race cannot rescue his claim. As noted above, "our favor toward the nonmoving party on summary judgment 'does not extend to drawing inferences that are supported by only speculation or conjecture.'" *Brown,* 700 F.3d at 1108; *see also Mlynczak*, 442 F.3d at 1058 ("if the subjective beliefs of plaintiffs in employment discrimination cases could, by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed.") (cleaned up). There is simply

nothing in the record that would allow a reasonable jury to conclude that Phillips was terminated because of his race.

Construing the facts and all reasonable inferences in his favor, Phillips has not presented sufficient evidence creating a genuine issue of material fact for trial concerning his race discrimination claims. *See Blow*, 855 F.3d at 797–98. The Court therefore grants Defendants' motion for summary judgment as to Phillips's race discrimination claims as alleged in Counts I and II.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment [142]. Judgment is entered in favor of Defendants on all counts. Civil case terminated.

It is so ordered.

Dated: 3/28/2023

Charles P. Kocoras
United States District Judge